Filed 9/25/23  P. v. Macias CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS MACIAS,<br><br>    Defendant and Appellant. | F085627<br><br>(Super. Ct. No. MF011504A)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Tiffany E. Organ-Bowles, Judge.

Margaret M. Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

* Before Poochigian, Acting P. J., Smith, J. and Snauffer, J.

## STATEMENT OF APPEALABILITY

This appeal is from the trial court's January 18, 2023, order denying Macias's petition for resentencing. (Pen. Code, §§ 1172.6, 1237, subd. (b).)[1]

## STATEMENT OF THE CASE

On October 15, 2015, the Kern County District Attorney filed a consolidated information charging Macias with one count of making a criminal threat (§ 422; count 1); one count of discharging a firearm at a motor vehicle (§ 246; count 2); two counts of assault with a firearm (§ 245, subd. (a)(2); counts 3 & 4); one count of premeditated attempted murder of a peace officer (§§ 664, 187, subd. (a); count 5); two counts of assault with a semiautomatic firearm on a peace officer (§ 245, subd. (d)(2); counts 6 & 7); one count of resisting an executive officer by force or violence (§ 69; count 8); and one count of brandishing a firearm to avoid arrest (§ 417.8; count 9). The information further alleged Macias was armed with a firearm during the commission of count 1 (§ 12022, subd. (a)(1)), personally used a firearm during the commission of counts 1 and 8 (§ 12022.5, subd. (a)), and intentionally and personally discharged a firearm during the commission of counts 5, 6, and 7 (§ 12022.53, subd. (c)).

A jury found Macias guilty of counts 1, 5, 6, 7, 8, and 9, and not guilty of counts 2, 3, and 4. The jury found true the firearm enhancements on counts 1, 5, 6, and 8, but found not true the firearm discharge enhancement as to count 7.

At the sentencing hearing on February 24, 2017, the court imposed a sentence of 15 years to life for the attempted murder in count 5, plus 20 years for the discharge of a firearm enhancement. The court imposed an additional seven years for the assault with a firearm on a peace officer in count 7, to be served consecutively to the term in count 5. The court also imposed eight months for the criminal threats conviction in count 1, plus 16 months for the firearm use enhancement, to be served consecutively to the term in

---

[1] All statutory references are to the Penal Code unless otherwise stated.

count 7.  Sentencing on the remaining counts and enhancements was stayed.  Macias's total term was 15 years to life, plus 29 years.

Macias filed a notice of appeal on February 24, 2017.  On December 3, 2019, this Court issued an opinion reversing his conviction on count 1, but otherwise affirming the judgment.  (*People v. Macias* (F075223, Dec. 3, 2019 [nonpub. opn.].)

On July 13, 2022, Macias filed a petition for resentencing pursuant to section 1170.95 (now § 1172.6).  On January 18, 2023, the trial court denied the petition on the basis that Macias was convicted of attempted murder of a peace officer, making him ineligible under the statute.  (§ 189, subd. (f).)

On January 20, 2023, Macias filed a timely notice of appeal from the order denying his petition for resentencing.

## STATEMENT OF FACTS[2]

### I. Prosecution Evidence

#### A. Christopher Cragg and Lee Hall Incidents (November 2014)

##### 1. Early November 2014 Incident

Christopher Cragg's grandfather, Lee Hall,[3] owned a large tract of land in the desert in Rosamond.  The property contained a three-bedroom modular home and two full storage containers.  Cragg and Hall would check on the property regularly to make sure things had not been stolen or vandalized.

In early November 2014, Cragg and Hall went to the property and saw a fence had been torn down, the locks on the storage containers had been cut, and items inside the containers had been stolen.  As Cragg and Hall drove away from the property, they saw a pickup truck stopped on the side of the road and parked behind some sagebrush no more than a quarter of a mile away from the property.  As Cragg and Hall continued down the

---

[2] We copy the facts verbatim from our prior opinion in this case, case No. F075223.

[3] Lee Hall was 87 years old at the time of trial.

road, the pickup would move forward and backward trying to stay hidden in the brush. Hall, who was driving, parked alongside the pickup, but facing the opposite direction. Both Cragg and Hall exited. Hall came up to the driver's side door of the pickup as Cragg stood closer to the back tires of the pickup.

Hall recognized the driver of the pickup as a man he knew as "Louie," and Cragg was able to identify Macias in court as the pickup's driver. Cragg commented the tires on Macias's pickup appeared to match the tire tracks he had seen on Hall's property. Cragg then accused Macias of stealing items from Hall's property.

Hall asked Macias, "Can I help you?" Macias said, "No." Hall then asked, "Well, what are you doing?" Macias responded, "None of your fucking business." Macias, who remained seated in his pickup, then pulled out a handgun and pointed it in Hall's face and said, "I'll blow your fucking head off." Cragg then called 911, and Macias drove away during Cragg's 911 call.

The 911 call was played for the jury. The call was three minutes and 49 seconds in duration and began with Cragg telling the dispatcher that he and Hall needed a sheriff out at their location because they had caught someone "ripping [them] off." Cragg and the dispatcher went back and forth for about a minute trying to pinpoint Cragg and Hall's location. At one minute and nine seconds into the call, Cragg said, "The guy's got a gun on us." Exactly 10 seconds later, Cragg said, "And now he's driving away." Over the next two minutes of the phone call, the dispatcher asked Cragg a series of questions, including what the suspect took, whether the suspect had the gun while he was taking the items,[4] what the suspect looked like, what the gun looked like, and in which direction the suspect went. Cragg answered all of the dispatcher's questions. The dispatcher then asked if Cragg and Hall were okay, and Cragg said, "Yeah, we're fine. He left. We're

---

[4] Cragg answered this question, "No. We caught him coming out and we blocked him in and then he pulled a gun on us." However, Cragg clarified at trial that they in fact did not block Macias in.

4.

fine." The dispatcher asked Cragg to confirm the suspect's license plate number, and said, "We're going to get somebody out there, okay? If he comes back before we get there, you let us know, okay?" Cragg responded, "Will do. Thank you so much." Cragg and the dispatcher said goodbye and the call ended.

After Macias drove away, Cragg and Hall got back into their vehicle and followed Macias to a nearby residence. Macias got out of his pickup, ran into the yard, and said, "See, no gun," before taking off on foot into the desert.

### 2.     November 20, 2014 Incident

On November 20, 2014, Cragg and Hall again checked on Hall's property. Cragg testified he was driving away from the property when he saw Macias driving his pickup in the opposite direction on the same road. Cragg made a U-turn and followed Macias. Macias then shot several rounds at their vehicle, one of which hit the radiator and caused the vehicle to stop running. Hall, however, testified that Macias was driving toward them and then stopped his pickup and began shooting at the front of their vehicle. Cragg later reported this incident to the sheriff's department and showed the deputies the damage to their vehicle.

### B.     July 28, 2015 Shootout and Standoff

On July 28, 2015, sheriff's deputies learned Macias was possibly at his father's property near Tehachapi Willow Springs. The property was a large compound with several buildings that formerly was a plant nursery. Several deputies planned to arrest Macias on a felony warrant relating to the Cragg and Hall incidents.

Deputies Skidmore, Escobedo, Juden, Vasquez, and Coleman and Sergeant Anton responded to the compound. Macias's father was present and gave the deputies permission to search the compound. After the deputies had searched all the other buildings, the only building left to search was a singlewide trailer. When Escobedo knocked on the trailer door, a Hispanic male opened the door and walked out. The man said Macias was inside and indicated he had a gun.

5.

Escobedo and Coleman positioned themselves on the west side of the trailer, while Vasquez and two other deputies went to the east side of the trailer. As Vasquez approached the window on the east side of the trailer, he heard someone banging on the window and the window shattering. Vasquez did not know by what means the window was shattered. Escobedo and Coleman also heard glass break, and the two of them ran over to the east side of the trailer. After hearing glass break, Escobedo heard someone yell, "He has a gun." Coleman saw a gun protruding out of the window toward Vasquez, and he heard Vasquez giving Macias commands to show his hands and drop the gun.

As Vasquez got closer to the broken window, he saw Macias in the window pointing a black handgun at him. Macias was about 15 to 25 feet away from Vasquez. Believing he was about to be shot, Vasquez brought his M-16 rifle up to his shoulder, aimed it at Macias, and pulled the trigger to fire, but the rifle did not fire because the magazine had fallen out. Vasquez then yelled "gun" and retreated to the south end of the trailer.

After Macias disappeared from view, Coleman and Escobedo retreated to their former positions on the west side of the trailer. Macias then forced open a boarded-up door of the trailer. Coleman commanded, "Sheriff's office, let me see your hands." Macias poked his head out and looked in Coleman's direction, and then quickly went back inside. Macias reappeared, pointed a black handgun at Coleman, and began tracking Coleman. Macias then fired one round at Coleman. Coleman returned fire and hit Macias in the shoulder. Escobedo also fired several rounds from his shotgun into the trailer through the backside of the trailer door, hitting Macias multiple times.

Macias retreated into the trailer and a several-hour standoff ensued before Macias surrendered. A black Colt 1911 .45-caliber semiautomatic Delta Gold Cup handgun was found inside the trailer.

When interviewed by deputies at the hospital the next day, Macias admitted he knew he had an outstanding felony arrest warrant. Regarding the shootout with deputies,

Macias said he was exiting the rear door of the trailer with a gun in his hand, but he was shot before he even had the chance to point the gun at the deputies or to put it down. He denied ever pointing the gun at the deputies.

## II.    Defense Evidence

Macias testified in his own defense. He confirmed the black semiautomatic handgun shown to the jury multiple times was his. He said there was a shooting range about two to two and a half miles from his father's property that he visited every time he went out to the desert. He also sometimes shot on his dad's property.

As to the first incident in early November 2014 involving Cragg and Hall, Macias said Cragg and Hall approached him when he was sitting in his pickup on the side of the road. Cragg told Hall that Macias had been stealing from them. They argued for a minute or two and Macias told them they were "F'ing crazy." Cragg and Hall called the police and Macias drove off.

Regarding the later incident in November 2014 with Cragg and Hall, Macias said he was driving his pickup and noticed Cragg and Hall following him. He stopped and waited for them to get closer so he could ask them why they were following him. Macias was walking toward them when Hall shot at Macias a couple of times with a rifle. Macias got back into his pickup and Cragg and Hall followed him. Macias turned and shot at their vehicle as Macias continued driving. He said he was in fear for his life and shot at their radiator so they would not be able to continue following him.

Regarding the shootout with deputies, Macias said he was watching television in the trailer with one of his dad's workers when he saw sheriff's vehicles pull up to the trailer. He heard knocks on the door and realized multiple deputies were outside. Macias tried to flee by running out through the back window. He kicked out the window with his feet and saw two deputies standing outside of the window with guns. He was holding his gun, which he said was "cocked and loaded," at the time he kicked out the window. However, he denied attempting to fire at deputies.

7.

Macias then paced back and forth in the hallway thinking about what to do. He decided to open the side door to throw his gun to the deputies to show them he was not armed. He was shot when he opened the door, and he said his "muscles locked" and his gun fired. He said he never pointed his gun at Coleman.

Macias said he was either asleep or on medication when the deputies spoke with him in the hospital the next day.

## APPELLATE COURT REVIEW

Macias's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) The opening brief also includes the declaration of appellate counsel indicating Macias was advised he could file his own brief with this court. By letter on August 9, 2023, we invited Macias to submit additional briefing. To date, he has not done so.

Having undertaken an examination of the entire record, we find no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to Macias.

## DISPOSITION

The trial court's January 18, 2023, order denying Macias's petition for resentencing is affirmed.